# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ELMIRA L. WILLIAMS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-1553-E-BH** |
| | § | |
| **CRAWFORD & CO.,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, *Defendant Crawford & Co.'s Motion for Summary Judgment*, filed April 13, 2021 (doc. 40), should be **GRANTED**.

## I. BACKGROUND

Elmira L. Williams (Plaintiff) sues her former employer, Crawford & Co. (Defendant), for discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* (ADA), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (FMLA). (doc. 10.)

Defendant is an independent provider of claims management services to the insurance industry. (doc. 42 at 114.)[2]  It serves as an independent adjuster (IA) vendor for its insurer clients by supplying teams of IAs, who are employed by Defendant, to administer outsourced claims on behalf of the client. (*Id.*) Defendant maintains a roster of IAs who are allowed to accept or decline assignments from its insurer clients as available; IAs do not actively work for or receive compensation when not on assignment for Defendant. (*Id.*) To maximize the potential for securing assignments, IAs typically maintain placement on the rosters of multiple IA vendors, sometimes

---

[1] By *Special Order No. 3-251*, this *pro se* case was automatically referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

with the same insurer client through different vendors, and they may accept an assignment from any of those vendors. (*Id.*) If an IA receives a do-not-rehire (DNR) designation from a specific insurer, however, the IA is precluded from working for that insurer as an employee and from obtaining assignments for it through any of its vendors. (*Id.*) Receiving a DNR from an insurer is detrimental to an IA's employment prospects with that insurer. (*Id.*)

Plaintiff is a black female who had been on Defendant's reserve IA roster for catastrophe operations since October 2017. (*Id.* at 126.) Before that, she worked directly for State Farm as an underwriter for approximately four years, and she adjusted claims for it through other IA vendors for at least eleven months. (*Id.* at 38-39, 58-59, 96-103.) Plaintiff accepted two separate assignments from Defendant to work on teams exclusively handling State Farm claims. (*Id.* at 40-42, 114.) For the second assignment, which began on September 23, 2019, Plaintiff's team was hired by State Farm to administer backlogged claims that needed timely processing. (*Id.* at 42.)

Sandra Sleeper was the manager (Manager) who supervised Plaintiff during both State Farm assignments. (*Id.* at 41, 136.) Plaintiff claims Manager created a hostile work environment; when she missed work due to illness or doctor appointments, Manager demanded that she work during her lunch break to make up for the time off work. (*Id.* at 20.) Manager would yell at IAs and humiliate and embarrass them by openly belittling and degrading them in front of the team. (*Id.* at 21-22.) On one occasion, Manager failed to stop a verbal altercation between two coworkers or to reprimand them for their misconduct, and she created tension between IAs by having private meetings with her favorite IAs about personnel decisions involving other IAs. (*Id.* at 22-23.)

Plaintiff contends that at a team meeting held by Manager shortly after the second assignment started, a fellow adjuster on the team told Plaintiff that she could sit in his lap when she

was unable to find a chair. (*Id.* at 17-18.) Plaintiff asked Manager if she heard the comment and stated that it was sexual harassment, but Manager ignored the comment, telling her that she did not hear anything and that she was "walking away." (*Id.* at 18.) The adjuster, Ron Norman (Co-worker), would also go to the desks of Plaintiff and other female IAs and make sexually inappropriate comments about black women having big butts and wearing "ghetto stuff." (*Id.* at 18-19.)

From November 7 to 9, 2019, Plaintiff missed work due to vertigo. (*Id.* at 137.) When she informed Manager about her diagnosis, Manager responded that she needed to provide a doctor's note upon her return, as "[e]veryone on team that is out sick brings a [doctor's] note on return." (*Id.* at 105-06.) Defendant's Employee Handbook, which Plaintiff acknowledged receiving and reading, provides that "[y]our manager may require you to submit proof of illness from a licensed health care professional in circumstances deemed appropriate by the manager." (*Id.* at 59-60, 104, 131-34, 137.) Plaintiff saw her doctor on November 10, 2019, and received a note that cleared her to return to work with no restrictions. (*Id.* at 69-70.) While Plaintiff was absent from work, Manager disclosed her vertigo diagnosis to her coworkers during a team meeting. (*Id.* at 10-11, 14-15.)

Plaintiff emailed the doctor's note to Manager when she returned to work on November 11, 2019. (*Id.* at 69-71.) Even though she already emailed the note, Manager came to her desk and demanded that she show her the note. (*Id.* at 30-31.) After Plaintiff showed Manager the emailed note, Manager told Plaintiff that emailing it from her State Farm email address violated State Farm policy. (*Id.* at 33, 138.) Plaintiff asked to meet with Manager in private to discuss her inappropriate conduct, but Manager told her, "I'm the manager, not you," and left. (*Id.* at 27.) Co-worker later came to her desk and told her that he also suffered from vertigo, and that Plaintiff was "over exaggerating" the affects of her illness. (*Id.* at 12.)

On November 12, 2019, Plaintiff emailed a letter to Defendant's Human Resources Department (HR) to complain about Manager's "use of inappropriate behavior and intimidation" toward her. (*Id.* at 94-95, 119.) It alleged that Manager took part in inappropriate conversations with subordinates; she "overheard a male IA make sexual gestures toward [her], stating, 'You can sit on my lap,'" but did nothing to address the remark; she failed to intervene during a verbal altercation between two IAs; and she demanded that Plaintiff use her lunch break time for any time missed from work. (*Id.* at 94.) The letter was immediately forwarded to Defendant's Human Resources Business Partner, Melanie Busch (HR Partner), who scheduled interviews with Manager and Plaintiff for the following day. (*Id.* at 119, 123-24, 127.) During her interview with HR Partner, Plaintiff stated that the best outcome to address her workplace concerns would be to place the team under new management. (*Id.* at 71, 127.) Shortly after the interview, two new managers, including Janisse Brinkley (New Manager), were added to the team "to coach and train" Manager and "to get things back in order" with the team. (*Id.* at 72-73.)

HR Partner conducted a separate investigation regarding Co-worker's workplace conduct in connection with his comment that Plaintiff could sit on his lap. (*Id.* at 125-26.) The investigation began on November 14, 2019, and Co-worker was placed on unpaid leave of absence from November 14 to 18, 2019. (*Id.* at 127.) HR Partner interviewed Plaintiff, Co-worker, and six women on the team about Co-worker's conduct at work. (*Id.* at 127-28.) They reported that Co-worker had called women "girl" or "gal" on occasion and once asked a female IA to sit on his lap as joke. (*Id.*) During her interview with HR Partner, Plaintiff only requested that Defendant provide Co-worker counseling about his workplace language. (*Id.* at 115, 128.) On November 18, 2019, HR Partner and another senior employee met with Co-worker and verbally coached him on appropriate and

4

professional language and treatment in the workplace, and followed-up with counseling in writing:

> [T]he Company strives to maintain a productive work environment free from discrimination, harassment, and/or any other uncomfortable situations. All Crawford employees have a responsibility to act professionally and are expected to follow the guidance provided in these policies, regardless of where we work or the job we do for the Company. Based on our discussion, you have the understanding going forward that a professional vocabulary must be maintained within the workplace at all times.

(*Id.* at 115-16.)  On November 22, 2019, HR Partner emailed Plaintiff, informing her that the investigation had concluded, and to assure her that "appropriate action has been taken to ensure such conduct listed in your letter does not repeat itself." (*Id.* at 109.)

For the second State Farm assignment, IAs on Plaintiff's team were hired to adjust backlogged claims and to "work the tasks in regard to the claim number." (*Id.* at 42-44.)  According to Plaintiff, working a task involves any activity in a file that "get[s] the claim processed through, to push it further." (*Id.* at 44.) For example, a task is performed when an IA goes into an active claim that received mail, "click[s] on the mail, label[s] the mail and send[s] it to a task specialist," or when an IA reopens a claim and leaves a note indicating that it was reviewed. (*Id.*) Manager assigned the State Farm files to each IA on the team and told them that they needed to increase their daily quota of tasks performed from 30 to 50. (*Id.* at 43-44.) To meet this increased task quota requirement, Manager issued a work directive, suggesting that IAs work reopened claims. (*Id.* at 44.)

On December 2, 2019, Plaintiff received a direct instant message (IM) from a State Farm employee (SF Employee) about a file, where Plaintiff reported that she reviewed mail and reopened the claim but there was no current mail in the file. (*Id.* at 111.) SF Employee noted that she saw "this same file note from you a lot in reopened claims," and "got curious, as the handling is not obvious to me." (*Id.* at 112.) Plaintiff responded that she reopened the claim, that there was no mail and

nothing more to do with the claim, and that she left a file note to indicate that it was reviewed. (*Id.*) When Plaintiff asked whether she should not work reopened claims, SF Employee responded: "I'll leave it to your direct supervisors to decide your focus for the day, but I would have assumed on such a high volume day, there would have been a backlog of mail and calls to work that would be of more value." (*Id.*) SF Employee further advised Plaintiff to talk to her supervisor, as she "didn't understand the value of what was being accomplished by looking into reopened files." (*Id.*) Plaintiff did not speak to Manager because she was too busy and could not catch her. (*Id.* at 81.)

SF Employee immediately forwarded a copy of the IMs to personnel at State Farm, who then forwarded it to Manager, commenting that Plaintiff was "working reopen tasks," and that "she could have reclosed this file." (*Id.* at 145-46.) Manager forwarded the conversation to New Manager, who interpreted State Farm's decision to directly contact Plaintiff about a work-related concern as a "red flag" that it was troubled by her actions. (*Id.* at 149.) Plaintiff agreed that it was "highly unusual" for a manager at State Farm to contact her directly about her work "out of the blue." (*Id.* at 46.)

New Manager reviewed Plaintiff's recent work and determined that she "appear[ed] to be regularly submitting similar task notes in reopened claims, at a rate of approximately one to thirteen times daily, from approximately October 1 to December 2, 2019," and that the time Plaintiff spent on "non-substantive, reopened tasks" did not assist State Farm in "quickly processing backlogged, old claims." (*Id.* at 149.) New Manager believed that there was a significant risk that Plaintiff would receive a DNR designation from State Farm, because "once an insurer takes active notice of an IA due to a work deficiency, a DNR designation is likely to follow." (*Id.* at 149-50.) "[T]o help her avoid receiving a DNR designation and being precluded from future State Farm assignments," New Manager decided to remove Plaintiff from the assignment. (*Id.* at 150.)

6

On December 4, 2019, New Manager met with Plaintiff and explained that she was being released from the assignment because State Farm had contacted her about working on non-substantive reopened task work, which meant that she was on State Farm's "radar,"making it difficult for her to avoid its continued attention on the same assignment. (*Id.* at 150.) Plaintiff was advised that Defendant did not take any action to disqualify her from working with State Farm. (*Id.*) After her release from the assignment, Plaintiff later worked on State Farm claims through another IA vendor. (*Id.* at 84.)

On February 28, 2020, Plaintiff filed a charge of discrimination with the EEOC, alleging discrimination and retaliation based on race, disability, and gender. (*Id.* at 152-53.) She claimed that she was subjected to sexual harassment, that she suffered harassment from management based on her disability, and that she was discharged after informing her supervisor that she could not come to work due to her disability. (*Id.*) The EEOC dismissed her charge on March 16, 2020, explaining that it was unable to conclude that the information obtained during its investigation established violations of the statutes. (doc. 11 at 2.)

On April 13, 2021, Defendant moved for summary judgment. (doc. 40.) Plaintiff responded on May 3, 2021 (doc. 45), and Defendant replied on May 18, 2021 (doc. 50).

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[3] Although courts generally liberally construe the pleadings of a *pro se* plaintiff, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which

---

[3]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III.  DEFENDANT'S EVIDENTIARY OBJECTIONS

Defendant objects to some of the exhibits offered in support of Plaintiff's response to the motion for summary judgment. (doc. 50 at 12-14.)

### A.    Unsworn Statements

Defendant objects to the unsworn statements of Plaintiff's coworkers. (doc. 50 at 12-13.)

An affidavit opposing a motion for summary judgment must be sworn in order "to raise a fact issue precluding summary judgment." *See Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). An unsworn declaration may suffice if it is made "under penalty of perjury" and is "verified as true and correct." *See id.* (citing 28 U.S.C. § 1746); *accord Washington v. Moore*, 990 F.2d 626 (5th Cir. 1993) (unpublished). Attorneys and *pro se* litigants alike must strictly comply with the requirement of sworn statements, and courts should require correction of any deficiencies in supporting papers that they intend to rely on. *See Gordon v. Watson*, 622 F.2d 120, 123 (1980) (per curiam); *accord Brady v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F. Supp. 131, 135

(N.D. Tex. 1991).  An affidavit is defined as a "statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by such officer under his seal of office." *Blanco, Inc. v. Porras*, 897 F.2d 788, 792 (5th Cir. 1990); *see also Wavefront Technology Solutions, Inc. v. Morton*, No. H-11-383, 2012 WL 2846868, at *5 (S.D. Tex. May 2, 2012) (citations and quotations omitted), *adopted by* 2012 WL 2842269 (July 10, 2012). The officer's official certification is a jurat. *McCreary v. Director, TDCJCID*, No. 6:11-CV-282, 2012 WL 718616, at *3 (E.D. Tex. Mar. 5, 2012).

Here, all but one of the coworker statements included with Plaintiff's response include the required jurat, but none are made under penalty of perjury or verified as true and correct. (doc. 45 at 41-50.)  The unsworn statements may not be construed as affidavits or other competent summary judgment evidence, so Defendant's objection to them is **SUSTAINED**.[4]

**B.     EEOC Charge**

Defendant objects to the EEOC charge of a coworker on the ground that the document was not produced in discovery. (doc. 50 at 14.)

"Rule 37(c) disallows the use of evidence in a hearing, trial or to support a motion if the evidence was not produced in discovery." *De La Garza v. City of Corpus Christi*, No. 2:13-CV-353, 2014 WL 12586753, at *4 (S.D. Tex. Nov. 5, 2014); *see* Fed. R. Civ. P. 37(c)(1) (stating that upon failure to do so, a "party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). Courts consider four factors when determining if violations of disclosure requirements are harmless: "(1) the explanation, if any, for the non-disclosing party's failure to comply with the discovery rule; (2)

---

[4]Even if the unsworn statements were considered, they would not change the recommended outcome.

10

the prejudice to the opposing party; (3) the possibility of curing such a prejudice by granting a continuance; and (4) the importance of the evidence and related witnesses' testimony." *Reyes v. City of Farmers Branch, Texas*, No. 3:07-CV-900-O, 2008 WL 4791498, at *3 (N.D. Tex. Nov. 4, 2008) (citing *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). A "[c]ourt has broad discretion in deciding whether a violation of Rule 26(a) is substantially justified or harmless." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

Under the first factor, Plaintiff states that the EEOC charge "was not received until April 30, 2021 (after the Discovery period) and was immediately provided to defense counsel on May 1, 2021." (doc. 51 at 1.) Regarding the second and third factors, Defendant has not specified how it was prejudiced by the failure to disclosure or addressed the possibility of a continuance to cure any prejudice. As for the fourth factor, neither party addresses the significance of the EEOC charge in this case. Considering these factors together, Defendant has not shown that the EEOC charge should be stricken, and its objection is **OVERRULED**. *See Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989); Fed. R. Civ. P. 37(c)(1).

## IV. DISABILITY-BASED DISCRIMINATION

Defendant moves for summary judgment on Plaintiff's disability discrimination claims. (doc. 41 at 19-21, 23-24, 30-32.)

### A.    Disclosure of Confidential Medical Information

Defendant contends that Plaintiff failed to exhaust her administrative remedies as to her claim under the ADA's nondisclosure provisions, 42 U.S.C. § 12112(d), by not including it in her EEOC charge. (doc. 41 at 19.)

The ADA prohibits employers from discriminating against a qualified employee on the basis

of disability. 42 U.S.C. § 12112(a). It also generally prohibits employers from disclosing confidential medical information obtained through an authorized employment-related medical examination or inquiry. *See* 42 U.S.C. § 12112(d); *see also Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 711 (E.D. La. 2013) (citing *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011) ("[T]he employer is required to treat any information regarding the medical condition or history of an employee that the employer obtains from a medical examination or inquiry authorized under Section 12112(d) as a confidential medical record, subject to certain limited exceptions."). Before an individual can pursue an ADA claim in federal court, she must exhaust her available administrative remedies by filing a charge with the EEOC. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir. 1996). The scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *See Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir.1984). When reviewing the EEOC charge, courts should "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

Here, Plaintiff's EEOC charge alleges discrimination and retaliation based on race, disability, and gender. (doc. 42 at 152-53.) The charge does not mention any allegedly improper disclosure of medical information by Manager or Co-worker; the factual basis for her disability claim is limited to her discharge after informing Manager that she could not come to work due to her disability. (*Id.*) An investigation reasonably expected to grow out of the charge would not encompass a claim that

an employer unlawfully disclosed confidential medical information. *See Franklin*, 936 F. Supp. 2d at 710 ("[I]n the ADA context, a claim that an employer unlawfully required a medical examination and a claim that an employer unlawfully disclosed confidential medical information are distinct."). Defendant has met its initial summary judgment burden to show that Plaintiff has not exhausted her administrative remedies as to her unlawful disclosure of medical information claim.

Plaintiff must now direct the Court's attention to evidence raising a genuine issue of material fact. She has not met her burden, and Defendant is entitled to summary judgment on this claim.

## B.    **Wrongful Termination**

Defendant moves for summary judgment on Plaintiff's discriminatory termination claim on grounds that she cannot make out a prima facie case, but even if she could, it had a legitimate non-discriminatory reason for its action. (doc. 41 at 30-31.)

As discussed, the ADA prohibits a covered entity from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a).[5] A claim of discrimination under the ADA may be established by presenting direct evidence[6] or by using the indirect method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). The employee must first establish a prima facie case of intentional discrimination by showing that she (1) has a disability; (2) was qualified

---

[5]Under the ADA, an individual with a disability is a person who has a physical or mental impairment which substantially limits one or more of his major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102; *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). "Major life activities" include a non-exhaustive list of functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

[6]"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

for the job; and (3) was subject to an adverse employment action on account of her disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citation omitted). The employer must then show a legitimate, non-discriminatory reason for its action. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (citation omitted).

### 1.    *Prima Facie Case*

Defendant argues that Plaintiff cannot bring forward evidence showing that she was removed from the State Farm assignment on account of her disability. (doc. 41 at 24 n.3, 30-31.) To meet its summary judgment burden, Defendant points to Plaintiff's deposition testimony that Manager's "vindictive behavior" was the actual motive for her wrongful termination, and that she was being terminated for doing what Manager instructed her to do. (doc. 42 at 35-36.) By pointing out an absence of evidence to support Plaintiff's claim, Defendant has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact that her termination was motivated by her disability. *See Nichols*, 138 F.3d at 566. Plaintiff did not respond to this argument, or point to any evidence that the decision to release her

14

from the State Farm assignment was motivated by discriminatory animus. *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (holding that a plaintiff's "own self-serving generalized testimony stating her subjective belief that discrimination occurred . . . is simply insufficient to support a jury verdict in plaintiff's favor"). Plaintiff has failed to meet her burden, and Defendant is entitled to summary judgment on Plaintiff's disability termination claim.

### 2. *Legitimate Non-Discriminatory Reason*

Defendant also offers evidence showing a legitimate non-discriminatory reason for removing her from the assignment. (doc. 41 at 31-32.) New Manager's affidavit testimony is sufficient for a reasonable jury to conclude that Defendant removed Plaintiff from the State Farm assignment because State Farm complained about her non-substantive task work on reopened claims. (*See* doc. 42 at 149-50.) Plaintiff acknowledged that it was "highly unusual" for a State Farm employee to directly reach out about her work on a claim. (*Id.* at 46.) The Fifth Circuit has noted that an employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer v. PPG Indus. Inc*, 5 F.3d 955, 958 (5th Cir. 1993). Defendant has met its burden of production, and the burden now shifts to Plaintiff to raise a genuine issue of material fact by showing that the proffered reasons for her termination are pretextual.

### 3. *Pretext*

Plaintiff disputes Defendant's assertions that State Farm complained about her working on reopened claims. (doc. 45 at 6.) She points to the IM from the SF Employee, advising her to continue as instructed with the job. (doc. 42 at 147.) She does not address SF employee's comments concerning the value of her work on reopen claims, or explain why SF Employee forwarded their conversation to Defendant, however. Even if Defendant's reason for removing Plaintiff from the

State Farm assignment was faulty, this does not equate to pretext. *See Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 924-25 (5th Cir. 2009) (per curiam) ("The plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect."); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."). "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).

Plaintiff fails to identify any evidence, either circumstantial or direct, that would permit a reasonable jury to believe that Defendant's reason for her termination was false, and that illegal discrimination was the actual reason. Summary judgment on her ADA claim for discriminatory termination should be granted.[7]

---

[7]Plaintiff's amended complaint states that she "further seeks a mixed motive theory for her termination." (*See* doc. 10 at 2.) For certain employment discrimination claims, a plaintiff can also present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a "motivating factor" for the employment practice. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003). Under the mixed-motives alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Id.* Since the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009), which held that the mixed-motives alternative does not apply in discrimination cases under the Age Discrimination in Employment Act of 1967, "[i]t is unclear whether the mixed-motive[s] alternative to rebutting a defendant-employer's proffered legitimate reasons is still viable in ADA discrimination claims." *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 777 n.6 (N.D. Tex. 2013); *accord Polak v. Sterilite Corp.*, No. 3:19-CV-2972-D, 2021 WL 1753757, at *4 n.8 (N.D. Tex. May 4, 2021). Even though the Fifth Circuit has declined to decide whether the mixed-motives alternative in ADA cases survived the Supreme Court's decision in *Gross*, *see Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 371 n.4 (5th Cir. 2016), it affirmed the existence of the standard in disability discrimination cases after *Gross*, *see LHC Group, Inc.*, 773 F.3d at 702, and it continues to authorize a plaintiff to alternatively establish an employer's liability for disability discrimination under a "motivating factor" causation standard, *see, e.g., Jones v. Lubbock Cty. Hosp. Dist.*, 834 F. App'x 923, 927 (5th Cir. 2020); *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 n.12 (5th Cir. 2015). Even assuming that the mixed-motives alternative remains available in ADA discrimination cases, Plaintiff failed to identify any evidence that would enable a reasonable jury to find that her disability was a "motivating factor" for her termination. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 n.2 (5th Cir. 2005) (recognizing that evidence was insufficient to establish a fact issue on whether discrimination was a motivating factor in discharge "for the same reasons" it did not establish a fact issue on whether the employer's proffered

## V.  HOSTILE WORK ENVIRONMENT

Defendant also moves for summary judgment on Plaintiff's hostile work environment claims. (doc. 41 at 21-30.)

It is well established that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Similarly, an employee can bring a claim of disability-based harassment under the ADA. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 234-35 (5th Cir. 2001) (explaining that a disability harassment claim is "modeled after the similar claim under Title VII.") (citation omitted). The same substantive legal standards and evidentiary framework apply to claims under either statute. *See Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997) (recognizing that "the ADA is part of the same broad remedial framework as ... Title VII, and that all the anti-discrimination acts have been subjected to similar analysis"). To establish a hostile work environment claim, a plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected classification; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (sexual harassment claim); *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (disability harassment claim).  A plaintiff is not required to prove the fifth element if the alleged harasser is a supervisor. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001) (citation omitted).

---

reason was pretext for discrimination).

For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The alleged conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (citation omitted). In determining whether a workplace constitutes a hostile work environment, a court "examines the totality of circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Patton*, 874 F.3d at 445 (citation and quotations omitted); *see also Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004) (recognizing that "no single factor is required"). Although verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support a violation of Title VII or the ADA, simple teasing, offhand comments, and isolated incidents, unless extremely serious, are not sufficient. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "To survive summary judgment, the harassment must be 'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'" *Hockman*, 407 F.3d at 326 (citation omitted).

A.    **Disability-Based Harassment**

Defendant argues that Plaintiff's disability-based harassment claims are deficient as a matter of law. (doc. 41 at 21.)

1.    ***Doctor's Note, Disclosure of Illness, and Over Exaggeration Comment***

Defendant first argues that the alleged harassment was not sufficiently severe or pervasive.

18

(doc. 41 at 21-23.) It points to Plaintiff's testimony that she was harassed when Manager required

her to provide a doctor's note for her vertigo before returning back to work; Manager disclosed the

reason for her medical absence to her coworkers during a meeting; and Co-worker accused her of

"over exaggerating" her symptoms in front of others when she returned to work. (doc. 42 at 11-15.)

It offers evidence that Manager's request for a doctor's note was consistent with Defendant's pre-

existing written policy for all IAs, which was explained to Plaintiff. (*Id.* at 104-06, 131-35, 137.)

Requiring medical support for an extended absence hostile or abusive is not actionable harassment.

*See Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 796-97 (5th Cir. 2017) (finding

no actionable harassment where plaintiff was required to "work at least three to four hours in the

office and not to work from home . . . [and] take leave without pay instead of FMLA"); *Gowesky

v. Singing River Hosp. Syst.*, 321 F.3d 503, 510 (5th Cir. 2003) (finding no harassment where

plaintiff was required to present a full medical release from her physicians).[8]

       Defendant also argues that Plaintiff does not elaborate on what Manager said at the meeting,

or explain why disclosing her medical condition to her team is objectively offensive. Without more,

the disclosure an employee's medical condition to others is not harassment that is sufficiently severe

or pervasive to create a hostile work environment. *See Soledad v. United States Dep't of Treasury*,

304 F.3d 500, 506 (5th Cir. 2002) (finding employer's derogatory comments about plaintiff's

diagnosis and it telling other workers that they would have to work more overtime because of

plaintiff were insufficient to state a hostile work environment claim). While Plaintiff testified in her

deposition that she was offended when Co-worker told her that she was over exaggerating how

---

[8] Notably, even an unreasonable return-to-work condition alone does not constitute harassment under the ADA. *Gowesky*, 321 F.3d at 510.

vertigo affected her, a comment that "'engenders offensive feelings in a employee' does not sufficiently affect the conditions of employment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 67); *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563-64 (5th Cir. 1998) (finding supervisor's comments to plaintiff that he would "no longer tolerate her health problems" and that it was inappropriate for her to extensively use company's health benefits, "while insensitive and rude, would not be sufficient as a matter of law to state a claim of hostile environment harassment"). Defendant has met its initial burden.

The burden now shifts to Plaintiff to create a genuine material fact issue. She contends that her health conditions should not be up for discussion with Manager or any of the members of her team, but fails to present any authority for the proposition that the disclosure of an employee's medical condition amounts to harassment under the ADA. (doc. 45 at 6.)

### 2. *Manager's Work Behavior*

Defendant argues that Plaintiff's hostile work environment claim based on Manager's management style cannot survive summary judgment because the complained-of actions were not based on her disability. (doc. 41 at 29.) It points to Plaintiff's testimony that Manager created a "hostile work environment" for her because she required that IAs take shorter lunch breaks whenever they missed work; yelled at IAs and would "degrade anyone openly, without bringing them into a personal meeting with her;" failed to stop a verbal altercation between two coworkers that "almost got physical;" and consulted with her favorite IAs about corrective actions on other IAs, causing tension between the IAs. (doc. 42 at 20-24.) She points to no evidence showing that these actions were taken based on her disability, or her membership in any other protected group. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 586 (5th Cir. 2020) (finding that plaintiff failed

to satisfy the third prong of his disability-based harassment claim because he did not show that the harassment was based on his disability). Notably, Plaintiff testified that other members of her team were also subjected to the same harassment. (doc. 42 at 20-24.)

Because Defendant has met its initial burden, the burden now shifts to Plaintiff to create a genuine material fact issue with respect to her hostile work environment claim based on Manager's work behavior. She fails to identify any evidence, either circumstantial or direct, that would permit a reasonable jury to believe that Manager's harassment was based on her disability. *See Clark*, 952 F.3d at 586; *see also Mitchell v. Snow*, 326 F. App'x 852, 857 (5th Cir. 2009) (affirming summary judgment of hostile work environment claim where "[n]ot even [plaintiff] herself explained why she felt that her race, sex, or age was the cause of the mistreatment she alleges").

Considering the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating or merely an offensive utterance, and whether it interfered with her work performance, Plaintiff has failed to identify a genuine material fact issue with respect to her disability harassment claim. *See Patton*, 874 F.3d at 445. Summary judgment should be granted.

## B. Sexual Harassment[9]

Defendant argues that Plaintiff did not endure severe or pervasive sexual harassment, and

---

[9]Because Plaintiff is proceeding *pro se*, her pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n.3 (N.D. Tex. Aug. 15, 2014). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010). Accordingly, Plaintiff's allegations and claim for sexual harassment asserted in her deposition are construed as a motion to amend, the motion is granted, and the new claim and allegations are considered.

that it took prompt remedial action after she complained of harassment.

### 1.    *Severe or Pervasive Harassment*

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (alteration original) (citation omitted). "To set forth a proper hostile work environment claim based on sexual harassment by a co-worker, a plaintiff must demonstrate that: '(1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.'" *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 827 (5th Cir. 2009) (quoting *Harvill*, 433 F.3d at 434).

Plaintiff testified that Co-worker told her that she could sit in his lap when she could not find a chair at a team meeting. (doc. 42 at 17-18.) She also testified that he would come to her desk and those of other females on her floor and would "make remarks about our hair, body parts, such as black women having big butts and how they wore, like, ghetto stuff, like the long nails and things like that." (*Id.* at 18.) These comments, although offensive, are not enough to support Plaintiff's claim. *See Hockman*, 407 F.3d at 328 (finding remarks about a coworker's body and requests to be alone with plaintiff are "offhand comments that are boorish and offensive, but not severe"); *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996) (finding single joke involving condoms insufficient to create hostile environment); *see also DeAngelis*, 51 F.3d at 595-96 (noting that "mere utterance of an ... epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment). Notably, more egregious comments have been found

insufficient to support a hostile work environment claim. *See Shepherd v. Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (finding alleged conduct of coworker, which included him commenting that plaintiff's "elbows are the same color as your nipples," remarking that she had big thighs while simulating looking under her dress, attempting to look down her clothing, and patting his lap at an office meeting while telling her, "here's your seat," did not render plaintiff's "work environment objectively 'hostile' or 'abusive'").

### 2.  *Prompt Remedial Action*

"An employer becomes liable for sexual harassment only if it knew or should have known of the harassment and failed to take prompt remedial action." *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (citation omitted). "What constitutes prompt remedial action is a fact-specific inquiry and 'not every response by an employer will be sufficient' to absolve the employer of liability under Title VII." *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014) (citing *Hockman*, 407 F.3d at 329). For example, the Fifth Circuit has held that an employer took prompt remedial action because "[i]t took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations." *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794-95 (5th Cir. 1994) (per curiam).

Here, even if Co-worker's conduct was sufficiently pervasive or severe to support a sexual harassment claim, Defendant points to evidence showing that it promptly addressed Plaintiff's complaint of harassment. (doc. 41 at 27-29.) On the same day that Plaintiff sent her complaint to HR, it was forwarded to HR Partner. (doc. 42 at 123-24.) HR Partner began investigating Co-

worker's lap comment two days later, and Co-worker was placed on a leave of absence. (*Id.* at 127.) HR Partner interviewed Plaintiff, Co-worker, and six female coworkers, and determined that Co-worker occasionally called women "girl" or "gal," and that his lap comment was only intended to be a joke. (*Id.* at 127-28.) As a result of the investigation, Co-worker received counseling before he returned to work, which was the remedial action that Plaintiff had requested in her interview with HR Partner. (*Id.* at 51, 128.) Plaintiff also received an email, informing her that Defendant concluded with the investigation of her complaint, and that "appropriate action" had been taken to prevent similar conduct from occurring in the future. (*Id.* at 109.) She admitted in her deposition that she did not have any complaints about Co-worker's language after he returned to work. (*Id.* at 53-54); *see Skidmore*, 188 F.3d at 616 ("[I]n determining whether the employer's actions were remedial, we have considered whether the offending behavior in fact ceased."). The evidence demonstrates that Defendant promptly and reasonably responded to Plaintiff's sexual harassment complaint. *See Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996) (affirming summary judgment in employer's favor on Title VII claim where employer "took [employee's] complaints seriously and conducted a prompt and thorough investigation").

Because Defendant has met its initial burden, the burden now shifts to Plaintiff to present or identify evidence that raises a genuine issue of material fact as to her sexual harassment claim. She fails to cite to evidence from which a reasonable fact-finder could conclude that the alleged conduct were sufficiently severe or pervasive to create a hostile work environment, or that Defendant did not sufficiently respond to her complaints of sexual harassment. Accordingly, Defendant is entitled to summary judgment on Plaintiff's sexual harassment claim.

## VI. ABANDONED CLAIMS

Defendant contends that Plaintiff abandoned her claims for retaliation and FMLA violations during her deposition in the following exchange:

> Q. Now, are these three claims, the ADA/FMLA discrimination, the ADA retaliation and the FMLA retaliation -- are those the three, and only three, claims that you bring in this lawsuit?
>
> A. No.
>
> Q. So there are other claims not listed in this complaint that you believe you're bringing?
>
> A. Yes.
>
> Q. What are the other claims that you believe that you're bringing in this lawsuit?
>
> A. My ADA discrimination, sexual harassment, hostile work environment and wrongful termination.
>
> Q. Okay. Are you bringing an FMLA claim?
>
> A. No.
>
> Q. All right. But you are bringing an ADA, or an Americans with Disabilities, claim; is that correct?
>
> A. Yes, due to my vertigo.

(doc. 42 at 7-8.)

"The Fifth Circuit has held that a claim or defense may be abandoned (or waived) when a party fails to pursue it beyond their initial pleading." *Williams v. Petroleum*, No. CV 18-1012-JWD-SDJ, 2021 WL 649786, at *5 (M.D. La. Feb. 3, 2021), *adopted by* 2021 WL 641543 (M.D. La. Feb. 18, 2021) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Courts have found that a plaintiff clearly abandons a claim when she announces that she no longer intends to pursue it during her deposition. *See Moore v. United Parcel Serv.*, No. CIV.A. 303CV1399L, 2004 WL 2339792, at *11 (N.D. Tex. Oct. 15, 2004), *aff'd sub nom. Moore v. United*

*Parcel Serv., Inc.*, 150 F. App'x 315 (5th Cir. 2005); *see, e.g., Williams*, 2021 WL 649786, at *6 ("Here, Plaintiff not only testified that she was no longer claiming race discrimination, as she could not prove it, she likewise failed to defend her race discrimination claim in response to Defendant's Motion for Summary Judgment. And so, Plaintiff has abandoned her claim for race discrimination—whether at her deposition or in response to the instant Motion—and summary judgment is appropriate."); *Ramirez v. Michelin N. Am., Inc.*, No. C.A. C-07-228, 2007 WL 2126635, at *4 (S.D. Tex. July 19, 2007) ("In this case, the Court finds that the Plaintiffs have each definitely and unequivocally announced during their depositions that they have no serious, good-faith intent to prosecute their negligence claim against Defendant Olberth Maydana."). A plaintiff also abandons a claim when she fails to defend it in response to a motion to dismiss or summary judgment motion. *See Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017).

Plaintiff testified that she is not bringing an FMLA claim, and that she is only asserting claims for "ADA discrimination, sexual harassment, hostile work environment and wrongful termination."(doc. 42 at 7.) She did not respond to Defendant's argument that she had abandoned her FMLA and retaliation claims. *See Arias v. Wells Fargo Bank*, N.A., No. 3:18-CV-00418-L, 2019 WL 2514998, at *7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned."). She has therefore abandoned or waived the retaliation and FMLA claims in her amended complaint.

## VII.  RECOMMENDATION[10]

Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiff's

claims should be **DISMISSED with prejudice.**

SO **RECOMMENDED** on this 24th day of November, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10]In her response to the motion, Plaintiff states that Defendant had "Negligent Hiring, Training and Retention of employees' supervisors/managers." (doc. 45 at 4.) Any claims for negligent hiring, training, and retention fail as a matter of law, as such claims would be "preempted by the antidiscrimination statutes that cover such allegations." *Stover v. City of San Antonio by & Through City Pub. Serv. Bd. of San Antonio*, No. SA-14-CV-489-FB, 2014 WL 12878566, at *1 (W.D. Tex. Aug. 6, 2014), *adopted by* 2014 WL 12878564 (W.D. Tex. Sept. 30, 2014) (state law claims preempted by the ADA); *see also Howe v. Yellowbook, USA*, 840 F. Supp.2d 970, 980 (N.D. Tex. 2011) ("Moreover, Title VII preempts [plaintiff's] claim for negligent supervision and retention.").

27